# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-DP-00282-SCT

*THOMAS EDWIN LODEN, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/21/2001 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | ITAWAMBA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF CAPITAL DEFENSE COUNSEL BY: ANDRE DE GRUY STACY P. FERRARO |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MARVIN L. WHITE, JR. JASON LEWIS DAVIS |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | AFFIRMED - 10/04/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2006-CA-00432-SCT

*THOMAS EDWIN LODEN, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/15/2006 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | ITAWAMBA COUNTY CIRCUIT COURT |

ATTORNEYS FOR APPELLANT:    OFFICE OF THE CAPITAL DEFENSE
COUNSEL
BY: ANDRE DE GRUY
THOMAS EDWIN LODEN, JR. (PRO SE)

ATTORNEYS FOR APPELLEE:    OFFICE OF THE ATTORNEY GENERAL
BY: MARVIN L. WHITE, JR.
JASON L. DAVIS

DISTRICT ATTORNEY:    JOHN RICHARD YOUNG

NATURE OF THE CASE:    CIVIL - DEATH PENALTY - POST -
CONVICTION RELIEF

DISPOSITION:    POST-CONVICTION RELIEF DENIED -
10/04/2007

MOTION FOR REHEARING FILED:

MANDATE ISSUED:

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1. Late in the evening on June 22, 2000, Thomas E. Loden, Jr. ("Loden") kidnapped sixteen-year-old Leesa Marie Gray ("Leesa"). Over the next four hours, Loden repeatedly raped and sexually battered Leesa, videotaping portions of the sadistic acts, before murdering her by way of suffocation and manual strangulation. Following his arrest, Loden was indicted for capital murder, rape, and four counts of sexual battery. On September 21, 2001, Loden waived his right to a jury for trial and sentencing, and pleaded guilty to all six counts in the indictment. The Circuit Court of Itawamba County, Mississippi, accepted those pleas and adjudged Loden guilty on each count. At the sentencing hearing, Loden elected to waive cross-examination of all of the State's witnesses, to waive objection to all exhibits presented by the State, and not to offer any mitigation evidence on his own behalf. During the proceeding, Loden addressed the court and apologized to the friends and family of Leesa, by stating "I hope you may have some sense of justice when you leave here today." The circuit

2

court found all four factors required by Mississippi Code Annotated Section 99-19-101(7) (Rev. 2007) were satisfied, that sufficient aggravating circumstances existed, and "that the mitigating circumstances do not outweigh the aggravating circumstances and that the death penalty should be imposed." Subsequently, Loden filed notice of appeal.

¶2.     In July 2003, the Office of Capital Defense Counsel filed a "Motion to Vacate Guilty Plea" alleging that Loden's plea was involuntary because his "decision to plead guilty was based on inaccurate legal advice given by his trial attorneys." Specifically, Loden claimed that his guilty plea was made in reliance upon "trial counsel's erroneous advice that he could still appeal adverse rulings on pre-trial motions after entering the guilty plea." After testimony and exhibits were received, an "Order and Opinion" of the circuit court dismissed Loden's motion for post-conviction relief, finding that Loden knowingly and voluntarily entered his guilty plea, and that Loden cognizantly waived his right to appeal. Thereafter, Loden filed notice of appeal on dismissal of his motion for post-conviction relief. This Court entered an order consolidating the appeals.

**FACTS**

¶3.     Loden admitted that, at approximately 10:45 p.m. on June 22, 2000, he kidnapped sixteen-year-old Leesa. According to an interview of Loden, after discovering Leesa's car on the side of the road, he:

> asked her what was wrong. She said she had a flat. And I told her that . . . 'Don't worry. I'm a Marine.[1] We do this kind of stuff.' And . . . she got out . . . looked at the tire, and while I was bent down looking at the tire, off-

---

[1]At the time of the incident, Loden was employed as a Marine recruiter in Vicksburg, Mississippi.

3

handedly [I] asked her . . . 'Have you ever thought about being a Marine?' And she goes, 'No, that'd be the last thing I want to do with my life.' And that made me very upset. . . . From the back of my memory, what she said pissed me off so violently, I told her to get in the van.

From approximately 10:45 p.m. until 2:30 a.m. on June 23, 2000, Loden admitted he committed repeated acts of rape and sexual battery on Leesa, before murdering her by suffocation and manual strangulation.[2] Loden videotaped portions of the perverted and heinous crimes. Late that afternoon, Loden was discovered lying by the side of a road with the words "I'm sorry" carved into his chest and apparent self-inflicted lacerations on his wrists. Soon thereafter, Leesa's nude body, with her hands and feet bound, was found in Loden's van, pushed under a folded-down seat.

¶4.    Loden was indicted for capital murder,[3] rape, and four counts of sexual battery. That same day, the circuit court entered an order appointing James P. Johnstone to represent Loden. At his arraignment, Loden pleaded not guilty to all charges. Subsequently, the circuit court entered an order appointing David Lee Daniels as additional counsel for Loden.

_____

[2]Full details of the heinous and depraved incident were considered by the circuit court in an exhibit entitled State's "Offer of Proof," which Loden signed.

[3]The capital murder count specifically stated that Loden:

did wilfully, unlawfully, feloniously and without authority of law, with or without any design to effect death, kill and murder [Leesa] . . . *while . . . engaged in the commission of the felony crime of [k]idnapping* in that [Loden] did wilfully, unlawfully and feloniously without authority of law kidnap or forcibly seize and confine [Leesa] with intent to cause her to be secretly confined or imprisoned against her will by seizing her person and confining her against her will in a motor vehicle . . . which was in the control and custody of [Loden] in violation of Section 97-3-53, all in violation of Section 97-3-19(2)(e) . . . .

(Emphasis added).

4

¶5. Loden filed a number of pretrial motions, including: "Motion for Change of Venue"; "Motion for Appointment of Investigator for the Defense"; "Motion for Psychiatric Examination"; "Ex Parte Motion for Funds for Expert Assistance in the Field of Mitigation Investigation"; and "Motion to Declare Miss. Code Ann. § 97-3-19(2) Unconstitutional; or, In the Alternative, to Preclude the Prosecution From Relying on Miss. Code Ann. § 99-19-101(5)(d) as an Aggravating Circumstance at Defendant's Capital Resentencing Trial."

¶6. Loden's motion for change of venue argued extensive local media coverage as its basis. At the conclusion of the hearing, Circuit Judge Gardner stated that "it is my intention to move this case to Brandon, Rankin County, Mississippi for trial[,] for selection of a jury and for trial of the case." An order to that effect was entered by the circuit court.

¶7. Loden's "Motion for Appointment of Investigator for the Defense" claimed that "the investigator will locate and interview potential mitigating witnesses and assist in locating [Loden's] school and medical records." Furthermore, Loden pleaded that:

> [d]efense counsel is unable without the assistance of an investigator *to interview and prepare all witnesses*; *adequately develop the full range of mitigating circumstances that exist in this case*; rebut the State's evidence compiled by several investigators and detectives from several government agencies; and insure [Loden] receives as fair a trial as possible.

(Emphasis added). Loden proposed Herb Wells as a qualified investigator. The circuit court entered an order "authoriz[ing] the appointment of Herb Wells, as the Criminal Defense Investigator." Loden later filed a "Motion for Additional Funds for Investigator for the Defense." The circuit court likewise granted that motion.

¶8. Loden then filed a nearly identical motion styled "Ex Parte Motion for Funds for Expert Assistance in the Field of Mitigation Investigation" asserting "[d]efense counsel is

5

unable without the assistance of an investigator *to interview and prepare all mitigation witnesses*[,]" and that "[o]nly through the use of an investigator can I *adequately develop the full range of mitigating circumstances that exist in this case*." (Emphasis added). The second motion proposed Dr. Gary Mooers as a mitigation specialist. At the hearing, the State argued that Herb Wells had already been appointed as Criminal Defense Investigator and, therefore, Loden did not "need additional expert witnesses to go out and investigate the case for them." In response, Loden conceded that Mooers's services "*would be some of the same as a typical investigator*, but we would submit that [Mooers's] expertise and his Ph.D. from the University of Pittsburgh would make him an additional expert that would be necessary and vital to [Loden] and especially in the penalty phase . . . ." (Emphasis added). Prior to ruling, the circuit court noted that "I have already authorized your employing an investigator." The court found:

> [Mooers] proposes . . . to investigate, develop information, which all seems to be either something that the investigator, the attorneys or psychiatrists, psychologists would be involved in in developing the case. I don't know of any particular specialty within the law or a scientific basis for the kind of thing he proposes to do.

An order denying Loden's motion was entered by the circuit court.

¶9. Loden's "Motion for Psychiatric Examination" was:

> for the purpose of determining whether, by reason of some defect, disease, or condition of the mind or memory (1) the defendant is able to comprehend the nature of the charges against him and rationally aid in his defense; (2) at the time of the commission of the crime herein charged, the defendant was of such mental capacity as to distinguish between right and wrong.

Loden pleaded that it was "necessary for the State to examine the capacity of [Loden] at the Mississippi State Hospital at Whitfield in order to properly try this cause." The circuit court

6

found that "[a] psychological evaluation will be required by the [c]ourt at the Mississippi State Hospital." An order granting Loden's request was granted by the circuit court.

¶10.    Later, Loden filed an "Ex Parte Motion for Funds to Secure Expert Assistance in the Field of Psychology." Specifically, Loden claimed that he "*requires expert assistance to present to the jury the full array of mitigating circumstances that exist in this case* and to rebut any State's evidence tending to show aggravating circumstances." (Emphasis added). Once more, the circuit court entered an order granting Loden the relief sought and making funds available for a psychological evaluation to be performed by Dr. C. Gerald O'Brien. Finally, the circuit court granted Loden's "Ex Parte Motion for Funds to Secure Expert Assistance in the Field of DNA Analysis[,]" by "authoriz[ing] the appointment of George Schiro, as the DNA Expert for the Defense."

¶11.    In August 2001, Loden wrote a letter to Johnstone and requested that Johnstone:

> make the motion for a re-visit of the original warrant. I'd like that at least for the record. Would you do your best at trying to convince the judge to hear this. Then immediately following his ruling on that, *if against, I'd like to speak to you of the appeal process, and go ahead and enter a plead* [sic].

(Emphasis added). Regarding the appeal process, Loden asked "(1) *I'm fairly confident I'd get the death penalty, but how does 'appeal' work either way*? (2) In your professional judgment, do I have good grounds for an appeal?" (Emphasis added).

¶12.    After a forensic mental evaluation of Loden, the Mississippi State Hospital unanimously[4] found that Loden:

---

[4]The report of the Mississippi State Hospital was submitted by three mental health experts, Reb McMichael, M.D., Philip Meredith, M.D., and Shirley M. Beall, Ph.D.

7

has the sufficient present ability to consult with his attorney with [a] reasonable degree of rational understanding in the preparation of his defense, and that he has a rational as well as factual understanding of the nature and object of the legal proceedings against him.

We are unanimous in our opinion that [Loden] would have known the nature and quality of his alleged acts at the time of the alleged offenses, and that he would have known at that time that those alleged acts would be wrong.

*We are unanimous in our opinion that [Loden] has the capacity knowingly, intelligently, and voluntarily to waive or assert his constitutional rights.*

We are unanimous in our opinion that [Loden] was not experiencing extreme mental or emotional disturbance at the time of the alleged offenses, and that *his capacity to appreciate the criminality of his alleged conduct, or to conform his conduct to the requirements of the law was not substantially impaired at that time.*

(Emphasis added). The report concluded that factors such as Loden's alleged physical and sexual abuse as a child, combat-related trauma, and job and life-related stresses at the time of the crimes did not "rise to the level of exculpation, or even of statutory mitigation."

¶13. Loden's expert, Dr. O'Brien, opined that Loden was of average to above-average intelligence and, after extensively reviewing Loden's background, concluded that:

it is my opinion that, at the time of the incident with which he is charged, *[Loden] was under the influence of extreme mental and emotional disturbance and distress, although this probably did not rise to the level that he did not know the nature and quality of his acts or the difference between right and wrong in relation to those acts at that time.* However, his capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law was substantially impaired. In addition, there is no history of prior criminal activity reported or found in the records reviewed. *He appears at the present time to be competent to stand trial and assist in his own defense.*

8

(Emphasis added). Significant to the issue raised in Loden's post-conviction relief appeal, Dr. O'Brien's report reveals the mindset of Loden within thirty days before his pleas of guilty, stating, in part, that:

> [Loden] makes a point of telling me 'I don't want life,' in prison, and that he would like to plead so that he will receive the death penalty. This is not only because of his regret about the crime, but also because 'I don't want to see my wife lie on the stand,' referring to statements she has made which do not match up with his recollection of events, and also because he has diminishing confidence in his lawyers' handling of his case.

¶14. Faced with a mountain of evidence (of Himalayan proportions) sufficient to overwhelmingly prove his guilt, on September 21, 2001, Loden expressly waived his right to a jury at trial and in sentencing,[5] and pleaded guilty to all six counts in the indictment. The circuit court accepted the pleas and adjudged Loden guilty on each count. Prior to pleading guilty, Loden responded to a series of direct and simple questions from the court, reflecting a full understanding of the proceedings and a voluntariness to willingly enter his plea, including:

> Q. Are your pleas of guilty *free and voluntary* on your part?
> A. *Yes*, sir, they are.
>
> . . .
>
> Q. Do you understand that by entering pleas of guilty to these charges you are giving up or waiving a great number of legal rights that you have as a defendant in criminal proceedings?
> A. Yes, sir.
>
> . . .

---

[5]The State likewise filed a "Waiver of Sentencing Jury."

9

Q. . . . by proceeding to enter pleas of guilty to [the capital murder charge] you are waiving your right to have the jury make the determination of your guilt, first of all, and to determine what punishment should be imposed.
A. Yes, sir, I understand.

. . .

Q. . . . Do you understand that as to each of the charges, Counts I through VI, if you proceeded to trial before a jury and if the jury found you guilty of those charges and returned a verdict fixing the penalty at whatever they might fix it, in any event, the question of your guilt or innocence or imposition of the punishment determined by the jury *would be something that you could appeal to the Supreme Court of this state*?
A. *Yes*, sir, I understand.
Q. *Do you understand that by waiving a jury for the trial of this case and for the imposition or determination of an appropriate sentence to be imposed by this Court, you are giving up or waiving a valuable right*?
A. *Yes*, sir, I am.

. . .

Q. *Do you understand that if you proceed through the course of this and the Court makes a determination of your guilt,* **you will have no right to appeal** *that*? . . .
A. *Yes*, sir.

. . .

Q. Mr. Loden, do you understand that on your plea of guilty to the charge of capital murder in Count I . . . the maximum penalty which this Court might impose would be death; that the minimum penalty which this Court might impose would be life without parole. . . .
A. Yes, sir, I understand that.

. . .

Q. Mr. Loden, is there anything about these proceedings that you do not understand?
A. Not at this time, sir.

. . .

10

Q.  Do you understand that on your plea of guilty to capital murder and the other charges in this indictment it is possible that I will, acting pursuant to the waiver, impose the death penalty in this case?  Do you understand that?
A.  I understand that fully, sir.

(Emphasis added).[6]  Furthermore, Loden acknowledged that he signed and concurred with the State's "Offer of Proof."[7]  Finally, after the State recommended that Loden receive the death penalty, Loden acknowledged that he was aware the State would make that recommendation.

¶15.  In the subsequent sentencing hearing, Loden testified under oath:

Q. *Are you satisfied with the legal services and the advice given you by your attorneys*?
A. *Yes*, I am, sir.
Q.  Do you think that they have properly advised you concerning your constitutional rights, your legal rights, and properly advised you before pleading guilty to these charges?
A.  Yes, sir, I do.

(Emphasis added).  Consistent with Loden's stated desire to Dr. O'Brien to concede guilt and accept the death penalty, *supra*, Johnstone advised the court that "[w]e have conferred with our client Mr. Loden . . . and he's advised us that he does not want us to cross-examine witnesses or object to the introduction of any exhibits that are being introduced through these witnesses that the State intends to call."  Furthermore, Loden's other attorney Daniels informed the Court that Loden "has elected to and instructed us that he desires to waive

---

[6]Additionally, Johnstone and Daniels testified that, in their respective opinions, Loden understood the nature of the proceedings and desired to enter guilty pleas to the charges.

[7]Specifically, Loden stated:

A.  Generally and overall, yes, sir, I agree with everything.
Q.  Any inaccuracies in this that you wish to point out to me?
A.  No, sir.

presentation of . . . mitigation evidence for reasons I feel he will explain to the Court when given an opportunity to make a statement."[8] According to Loden, "I'm just doing what I feel I need to do."

¶16. In the sentencing phase, the State presented its "Offer of Proof" and Loden's concurrence therewith; Loden's guilty pleas; the testimony of Leesa's mother; the testimony of Captain Michael Bethay of the Mississippi Highway Patrol Criminal Investigation Bureau; and the testimony of a forensic pathologist. Bethay testified that Loden admitted that the multiple crimes were committed between "10:45 [p.m.] to some 2:30 in the morning[,]" evidencing an extended period of suffering by Leesa. Regarding Loden's intent to avoid or prevent arrest, Bethay testified that:

> A. There was a freshly-dug grave in a thick pine area approximately twenty to twenty-five yards at the top of the pond [on Loden's grandmother's property], which would have been the far side of the pond. If you walked up on the pond, you would have had to have crossed the levee and go up into the woods. And *in a real thick vegetation on top of the hill was a freshly-dug four foot or so by approximately two and a half to three foot grave.*
> Q. And the grave was in, would you consider or not consider, to be a *hidden location*?
> A. It was *very well hidden.*

---

[8]Nonetheless, Daniels made a brief statement summarizing the mitigation evidence which would have been offered absent Loden's instruction otherwise. According to Daniels:

> through our investigation and our clinical psychologist's expert that's been appointed by the Court we've been able to develop that Mr. Loden has a childhood history of extreme sexual child abuse himself; that in spite of that he was an exemplary student, that he entered the marine corps, that he served in the United States Marines with distinction for eighteen years, that he attained the rank of E-7, that he was highly decorated and a combat veteran in Desert Storm. He has no criminal history prior to today.

(Emphasis added). The forensic pathologist testified that Leesa was a virgin prior to being raped, as "[t]here was no prior penetration of the hymen," that he "would expect [that Leesa suffered] significant pain,"[9] and that the cause of death was a "[c]ombination of suffocation and manual strangulation[,]" either of which is a violent mechanism of death.

¶17. After having instructed counsel not to speak on his behalf, Loden asked to make a statement to the court, which was granted.[10] Loden proceeded to apologize to the friends and family of Leesa and admitted responsibility and culpability for "tak[ing] an irreplaceable element out of your world . . . . I hope you may have some sense of justice when you leave here today." The State, in requesting the death penalty, submitted that each factor required by Mississippi Code Annotated Section 99-19-101(7) was satisfied and that the "aggravating circumstances . . . far outweigh [the] mitigating circumstances . . . ." Specifically, the State further maintained that the requirements of Mississippi Code Annotated Section 99-19-101(5)(d) were satisfied in that "the capital offense, murder was committed . . . while the defendant was engaged in the crime of kidnapping[;]" that the requirement of Mississippi

---

[9]Consistent with the State's "Offer of Proof" signed by Loden and the videotape which demonstrates visually and audibly her pain and suffering. The videotape depicts Leesa "noticeably being put in pain" and captures her declaration "I'm hurting . . . please . . . I think I'm hurt really bad."

[10]The following was stated:

Court: Counsel for the defendant, I will give you an opportunity to argue. I understand your client has instructed you not to exercise your right, but you do understand I will permit that. If you wish to make any argument, I will certainly hear that. I am going to give the defendant an opportunity to make a statement.

Mr. Daniels: Your Honor, . . . in keeping with Mr. Loden's wishes, we will not make any formal argument. He would like to address the Court at this time.

13

Code Annotated Section 99-19-101(5)(e) was satisfied because Loden had concealed a hidden grave to bury Leesa's body to prevent its discovery and protect his reputation as a well-respected Marine; and that the requirement of Mississippi Code Annotated Section 99-19-101(5)(h) was satisfied as a five-foot, one-inch, 110-pound, sixteen-year-old girl was kidnapped around 10:45 p.m., then subjected to brutal repeated acts of rape and sexual battery while being videotaped, before her murder at approximately 2:30 a.m.

¶18.    The sentencing order reveals that the learned trial judge:

> conducted an extensive, on the record, examination of the Defendant for the purpose of determining whether or not the pleas of guilty offered by him were to be entered by him knowingly, freely, understandingly and voluntarily. The Court further made specific inquiry concerning the Defendant's understanding of his rights under the Constitution of the United States and the State of Mississippi and his right to have a jury hear the evidence offered by the State of Mississippi and himself on the issue of guilt or innocence on each of the charges against him and to decide those issues. The Court further examined Defendant concerning his understanding of his right to have a jury fix the punishment imposed (i.e. death, life without parole or life imprisonment) in the event he was found guilty of [c]apital [m]urder by a jury.

The circuit court further stated that it:

> does hereby find that each of *the pleas of guilty entered by Defendant were knowingly, freely, understandingly and voluntarily made* and that such pleas were not the result of any promises, threats or coercion of any kind *and that the Defendant was fully advised by his attorneys and the Court of his [c]onstitutional and statutory rights with regards to each charge and more specifically with reference to the sentence to be imposed*; that is that the Defendant had a statutory right to have the punishment to be imposed for the crime of [c]apital [m]urder determined by a jury and not the Court acting without a jury.

(Emphasis added). In imposing the sentence on the capital murder count, the circuit court:

> considered all of the evidence previously introduced in the proceedings on entry of Defendants['] pleas of guilty, and the additional proof offered including photographs introduced by the State, a video tape recovered from the

14

vehicle of the Defendant introduced by the State, the psychiatric reports of [Dr.] McMichael and members of the [s]taff at Mississippi State Hospital, and [Dr.] O'Brien, a clinical psychologist and forensic consultant who examined the Defendant at the request of the Defendant's attorneys.

Finding each factor required by Mississippi Code Annotated Section 99-19-101(7) was satisfied, the circuit court considered whether sufficient aggravating circumstances existed and concluded, beyond a reasonable doubt, that:

1. The capital offense ([c]apital [m]urder) was committed while the Defendant, [Loden], was engaged in the commission of the felony crimes of kidnapping, rape and sexual battery of [Leesa] . . . ;

2. The capital offense ([c]apital [m]urder) was committed by the Defendant, [Loden], for the purpose of avoiding or preventing his lawful arrest; and

3. The capital offense ([c]apital [m]urder) was especially heinous, atrocious or cruel.

Thereafter:

[t]he Court having considered and weighed the aggravating and mitigating circumstances *finds that the aggravating circumstances outweigh the mitigating circumstances and that the mitigating circumstances do not outweigh the aggravating circumstances and that the death penalty should be imposed*.

(Emphasis added).[11]

¶19. In February 2002, Loden, then represented by Daniels, filed notice of appeal. A month later, Loden personally sent a letter to Circuit Judge Gardner stating "I'd just like the opportunity to assist myself and review any motions before the court." Included with the letter was a pro se "Motion for Discovery of Evidence Presented to the Grand Jury[,]" which "may be needed for a pending motion, and certainly needed for appellate review."

---

[11]On Counts II-VI, Loden was sentenced to a thirty-year term on each count, to "run consecutive to all other sentences imposed in this cause."

¶20.    Subsequently, the Office of Capital Defense Counsel assumed Loden's representation and filed a "Motion to Vacate Guilty Plea and Incorporated Memorandum of Law" arguing that Loden's plea was involuntary because his "decision to plead guilty was based on inaccurate legal advice given by his trial attorneys."  Loden then claimed that his pre-plea August 2001 letter to Johnstone was indicative that he "[was] clearly interested in the appeal process and wants to appeal ruling in his case."  Furthermore, he asserted that his March 2002 letter to Circuit Judge Gardner "specifically stated that the discovery will be needed for 'appellate review.'"  Loden disingenuously complained that his guilty plea was made in reliance upon "trial counsel's erroneous advice that he could still appeal adverse rulings on pre-trial motions after entering the guilty plea."  To buttress this pretense, Loden attached an affidavit asserting:

> 3.  Prior to my decision to plead guilty, I discussed this decision with my attorneys, [Johnstone] and [Daniels]. [Johnstone] and [Daniels] advised me that by pleading guilty, I waived certain rights. [Johnstone] and [Daniels] also told me that if I received a sentence of death that the case would be subject to automatic review by the Mississippi Supreme Court.  It was *my* understanding that I could appeal my case.

> 4.  Prior to pleading guilty, I was very concerned about several pretrial motions and the decisions made on these motions.  It was *my* understanding that I could appeal these decisions and raise these issues again.

> 5.  I would not have plead guilty if I had known that I could not raise these issues in an appeal.

(Emphasis added).[12]  Loden attempted to bolster his argument by bootstrapping his affidavit and letters to persuade the court that he received ineffective assistance of counsel based on alleged erroneous advice, and this alleged deficient performance prejudiced him, as his decision to plead guilty was based thereon, while at the same time ignoring his previously articulated reasoning and statements.

¶21.   The circuit court held a hearing on Loden's "Motion to Vacate Guilty Plea."[13]  On direct examination, Loden testified as follows:

> Q.  Did you ever discuss with your attorneys appealing those rulings?
> A. . . . I can't say a appeal in that sense of the word.  After that meeting that I had with [Johnstone] when I thought that they could have done a better job, we sat down, and *he said that as long as everything was in the record it would automatically be reviewed*.  That's when [Daniels] told me that death penalty cases get looked at closer and it might be better that if I did get the death penalty in order to get the better closer look and review.

---

[12]An affidavit of Johnstone was also filed which provided:

4.  Prior to [Loden's] entry of the guilty plea, *[Daniels] and I advised [Loden] that by pleading guilty he was waiving his right to direct appeal*.  I also informed him that if he received a sentence of death that the case would be subject to an automatic review by the Mississippi Supreme Court.

5.  I told [Loden] that this *automatic review would be some sort of appeal but that was unclear to us which issues would be subject to review*.

(Emphasis added).

[13]The hearing was delayed, in part, because of jurisdictional confusion.  The circuit court had entered an order dismissing Loden's "Motion to Vacate Guilty Plea" finding that "the interest of judicial economy will be protected by these issues being addressed by the Supreme Court at this time."  Subsequently, Loden filed a "Miss. R. Civ. P. 59(e) Motion to Alter or Amend Judgment" with this Court arguing that the October 13, 2004, order of the circuit court was "manifestly wrong[,]" as "the proper jurisdiction is Itawamba County Circuit Court."  A panel of this Court found "that the trial court has exclusive jurisdiction to hear the motion for post-conviction relief as a result of the entry of a guilty plea.  Miss. Code Ann. § 99-39-5(2)."

17

. . .

A.  I think there's a part in [the August 2, 2001 letter to Johnstone] where I said, [']Could you bring this up for the record again?['] That specifically was talking about those suppression issues . . . *I was operating off the sense that Johnstone said if it was in the record it gets looked at. . . .* And I think the letter also goes on and says about chance for appeal stuff and that's when Johnstone continued to say . . . if it's in the record, it's going to get looked at . . . .

. . .

Q.  At any time in your discussions with counsel, *did either of them tell you if you pled guilty you would not be able to appeal the suppression issues*?
A.  *No*. That's . . . right the opposite of nearly what I got told.

. . .

Q.  At the time you entered your plea, based on your discussions with counsel, did you believe that the Supreme Court could review the ruling on the motions and if they found error in the trial court that you could get a new trial with that evidence excluded?
A.  Yes, exactly. What I got told was the Supreme Court gets it, death penalty cases are looked at closer. We had stuff in the record, and the Supreme Court could rule off the record and grant a new trial . . . .

. . .

Q.  *Did they ever tell you that if you pled guilty the only thing that would be reviewed by the Supreme Court was the sentence*?
A.  *No*, definitely not.

. . .

Q.  If you had been told that the only thing that would be reviewed was your sentence, *would you have pled guilty*?
A.  *No*.

(Emphasis added).

¶22.    On cross-examination, however, Loden clearly admitted that on September 21, 2001, he freely and voluntarily waived his right to a jury at trial and in sentencing, pleaded guilty,

18

and desired the death penalty for the sake of both Leesa's family and his own family. Furthermore, Loden clearly admitted that he stated in open court that he understood he would not be able to appeal his guilty pleas, but "fall[s] back to what Johnstone told [him], as long as it was in the record [he] didn't need an appeal, it was going to get looked at anyway."

¶23. In short, Loden jettisoned his previously-stated reasons for pleading guilty and waiving a jury, and argued that "the law in Mississippi is unequivocally clear there is no appeal from a guilty plea. . . . He relied on that misadvice [sic] and entered a guilty plea[,]" and "[h]is reliance on it prejudiced him in that he entered a plea of guilty that he would not otherwise have pled." In response, the State noted that "the burden of proof is on [Loden] on this PCR as to whether or not these pleas were knowingly, voluntarily, intelligently made[,]" and "there's a transcript of the proceeding that demonstrates that the plea is knowingly, voluntarily and intelligently entered." Additionally, the State maintained that "[t]he defendant was advised that pleading guilty in this case was a risk. He's advised by his attorneys he doesn't have a right to appeal. He's advised by the Court he doesn't have a right to appeal."

¶24. The "Order and Opinion" of the circuit court, filed on February 2, 2006, dismissed Loden's motion for post-conviction relief. The circuit court found that:

> [Loden] was informed in his lengthy guilty plea hearing of the important constitutional rights that he was waiving by entering a plea of guilty. In addition, [Loden] stated under oath at the plea hearing that he had been fully advised of all aspects of his case by his counsel, including the nature and elements of the charge. Subsequently, at the guilty plea hearing, the Court advised [Loden] of the charges against him and asked him if he understood that charge, to which he replied in the affirmative. . . . *The Court fully advised [Loden] that he was waiving his right to appeal. The Court then found that [Loden] had entered a knowing and voluntary plea.*

19

(Emphasis added).

¶25.    Loden filed a notice of appeal on dismissal of his motion for post-conviction relief.

This Court entered an order consolidating this appeal with his earlier-filed direct appeal.

## ISSUES

¶26.    As Loden pleaded guilty to all charges in the indictment, the validity of that plea may

not be challenged on direct appeal.  *See* Miss. Code Ann. § 99-35-101 (Rev. 2007).  Loden

asserts the following are sentence-related issues, proper for direct appeal:[14]

> (1) Whether Loden was improperly denied funds to retain the assistance of a
> forensic social worker to investigate and present relevant mitigating factors.
> (2) Whether the indictment charged a death-penalty eligible offense.
> (3) Whether the trial court erred in weighing the "avoiding arrest" aggravating
> circumstance.
> (4) Whether the submission of the Mississippi Code Annotated Section 99-19-
> 101(5)(d) aggravating circumstance violated the state and federal constitutions.
> (5) Whether the trial court erred in considering both the Mississippi Code
> Annotated Section 99-19-101(5)(d) aggravating circumstance and the
> "especially heinous, atrocious or cruel" aggravating circumstance.
> (6) Whether the statutorily-mandated proportionality review of Mississippi
> Code Annotated Section 99-19-105(3) was satisfied.

Loden separately asserts the following issue in his post-conviction relief appeal:

> (7) Whether alleged erroneous advice of trial counsel prejudiced Loden by
> causing him to enter an involuntary guilty plea to capital murder.

## STANDARD OF REVIEW

¶27.    This Court has stated that:

> [t]he standard for this Court's review of an appeal from a capital murder
> conviction and death sentence is abundantly clear.  On appeal to this Court,
> convictions upon indictments for capital murder and sentences of death must
> be subjected to "heightened scrutiny."  **Balfour v. State**, 598 So. 2d 731, 739

---

[14]*See* **Johnson v. State**, 925 So. 2d 86, 88 n. 1 (Miss. 2006).

20

(Miss. 1992) . . . . Under this method of review, all doubts are to be resolved in favor of the accused because "what may be harmless error in a case with less at stake becomes reversible error when the penalty is death." ***Id***. (quoting ***Irving v. State***, 361 So. 2d 1360, 1363 (Miss. 1978)).

***Thorson v. State***, 895 So. 2d 85, 97 (Miss. 2004).

## ANALYSIS

**I.    Whether Loden was improperly denied funds to retain the assistance of a forensic social worker to investigate and present relevant mitigating factors.**

¶28.    Loden filed an "Ex Parte Motion for Funds for Expert Assistance in the Field of Mitigation Investigation." The motion sought the services of forensic social worker Gary Mooers to aid defense counsel in interviewing and preparing mitigation witnesses and "adequately develop[ing] the full range of mitigating circumstances that exist in this case." The circuit court denied Loden's motion, finding that it had already granted Loden's earlier motion for an investigator and Mooers would repeat work "that the investigator, the attorneys or psychiatrists, psychologists would be involved in in developing the case."

¶29.    Loden now asserts that Mooers "would have uncovered substantial mitigation evidence[,]" and "[t]he denial of funds to hire a forensic social worker violated the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and Article 3[,] §§ 14, 26 and 28 of the Mississippi Constitution of 1890." In support thereof, he refers to the American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases.

¶30.    The State replies that "[t]he trial court provided Loden with an investigator and an independent psychologist in the person of [Dr. O'Brien], in addition to a full evaluation by

21

the staff at the Mississippi State Hospital at Whitfield." Thereafter, "[t]he trial court found that since he had furnished Loden with an investigator and an independent psychologist that those experts would be qualified to do what Loden proposed that such an expert would do." The State argues that this was not an abuse of discretion by the trial court and that the issue is moot "because Loden instructed his counsel not to present any mitigation evidence to the court on his behalf."

¶31.    In *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), the United States Supreme Court stated:

> [w]e recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has *access to the raw materials integral to the building of an effective defense*. Thus, while the Court has *not* held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, *see **Ross v. Moffitt***, 417 U.S. 600 (1974), it has often reaffirmed that *fundamental fairness* entitles indigent defendants to "*an adequate opportunity to present their claims fairly within the adversary system*," *id*. at 612.

*Ake*, 470 U.S. at 77 (emphasis added).

¶32.    This Court has stated that:

> "[t]he trial court's decision on a motion for funding for consultants or investigators for an indigent defendant is reviewed for *abuse of discretion*." ***Grayson v. State***, 806 So. 2d 241, 254 (Miss. 2001) (citing ***Hansen v. State***, 592 So. 2d 114, 125 (Miss. 1991)). The State does not have a constitutional obligation to provide indigent defendants with the costs of expert assistance upon every demand. ***Johnson v. State***, 476 So. 2d 1195, 1202 (Miss. 1985). However, this Court does recognize that expert assistance should be paid for in certain cases and *will address the need for support on a case-by-case basis to determine whether a defendant is prejudiced by the denial of expert assistance to the extent that he or she is denied a fair trial*. ***Id***. In determining whether a defendant was denied a fair trial because of failure to appoint or allow funds for an expert, some of the factors to consider are whether and to

22

what degree the defendant had access to the State's experts, whether the defendant had the opportunity to cross-examine those experts, and lack of prejudice or incompetence of the State's experts. *Fisher v. City of Eupora*, 587 So. 2d 878, 883 (Miss. 1991). This Court has also considered to what extent the State's case depends upon the State's expert, *Tubbs v. State*, 402 So. 2d 830, 836 (Miss. 1981), and the risk of error in resolving the issue for which the expert is requested. *Johnson v. State*, 529 So. 2d 577, 592 (Miss. 1988).

*Thorson*, 895 So. 2d at 122-23 (quoting *Townsend v. State*, 847 So. 2d 825, 829 (Miss. 2003)) (emphasis added). *See also Harrison v. State*, 635 So. 2d 894, 901 (Miss. 1994) (quoting *Johnson*, 529 So. 2d at 590) (this Court "will grant relief only where the accused demonstrates that the trial court's abuse of discretion is so egregious as to deny him due process and where his trial was thereby rendered fundamentally unfair."). Moreover, "[a]n indigent's right to defense expenses is 'conditioned upon a showing that such expenses are *needed to prepare and present an adequate defense*.' *Ruffin v. State*, 447 So. 2d 113, 118 (Miss. 1984). *Concrete reasons* for requiring an expert must be provided by the accused." *Howell v. State*, 860 So. 2d 704, 721 (Miss. 2003) (quoting *Green v. State*, 631 So. 2d 167, 171-72 (Miss. 1994)) (emphasis added). *See also Harrison*, 635 So. 2d at 901 ("a defendant must come forth with concrete reasons, not unsubstantiated assertions that assistance would be beneficial").

¶33. The circuit court judiciously provided Loden with state-funded investigative assistance in developing mitigation evidence. An order authorizing a Criminal Defense Investigator ("CDI") was granted, followed by an order granting additional funds for the CDI. An order providing a psychological evaluation of Loden at the Mississippi State Hospital was granted. Finally, an order making state funds available for Dr. O'Brien, Loden's selected psychologist, to examine and evaluate Loden was granted. Moreover,

23

Loden's later-filed motion set forth only generic reasons for the need of an additional expert, which effectively mirrored his prior requests to obtain an investigator and an expert in the field of psychology (i.e. "interview[ing] and prepar[ing] all mitigation witnesses" and "adequately develop[ing] the full range of mitigating circumstances that exist in this case"). Finally, Loden conceded that Mooers's services were indistinguishable from those of the other experts except insofar as Mooers had an alleged undefined special expertise and a Ph.D., which amount to "unsubstantiated assertions," not "concrete reasons." *Id*.

¶34. While "American Bar Association standards and the like . . . are guides to determining what is reasonable . . . *they are only guides*." ***Strickland v. Washington***, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (emphasis added). *See also* ***Wiggins v. Smith***, 539 U.S. 510, 524, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003). Furthermore, "[t]he State does not have a constitutional obligation to provide indigent defendants with the costs of expert assistance upon every demand." ***Thorson***, 895 So. 2d at 122. The lower court did not err in concluding that Mooers's redundant services were not justified. This Court finds there is no evidence to support that the learned circuit judge abused his discretion in so finding.[15]

**II.     Whether the indictment charged a death-penalty eligible offense.**

---

[15]Alternatively, this Court agrees with the State that this issue is moot because Loden chose to present no mitigation evidence to the circuit court. In either case, this Court finds that the April 14, 2005, affidavit of Mooers (copies of which were filed with this Court on appeal) ought not be considered, as it was not part of the original record of trial court proceedings. *See* Miss. R. App. P. 10(f); ***Craig v. State***, 44 So. 2d 860 (Miss. 1950).

¶35. Loden contends that "[t]he indictment did not include a valid statutory aggravating factor nor a *mens rea* element of Miss. Code Ann. § 99-19-101(5) and (7) respectively." He asserts that:

> in Mississippi, the finding of an aggravating circumstance and a *mens rea* element increases the penalty over the statutory maximum absent that circumstance, and therefore implicates the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, and the corresponding provisions of our state constitution.

While conceding that "this Court has held that the indictment in a death penalty case need not include aggravating circumstances, [*see*] **Williams v. State**, 445 So. 2d 798, 804 (Miss. 1984)," Loden argues that "the reasoning in **Williams** must be reconsidered in light of **Apprendi**[*v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)], **Ring**[*v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002)], and **Blakely**[*v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)]." As such, Loden maintains that "[b]ecause the indictment in this case failed to set forth a statutory aggravating factor or *mens rea* element, the death sentence imposed on [Loden] must be vacated and this case remanded for imposition of a life sentence, the maximum penalty for the offense charged in the indictment." In reply, the State argues that Loden's claim is without merit as "[t]he charge of capital murder is contained in Count I of the indictment." Moreover, the State insists that "[t]his Court has held that the decisions in **Ring** and **Apprendi** have no application to the Mississippi capital sentencing scheme."

¶36. "[T]he sufficiency of the indictment [is] not waivable and may be raised for the first time on appeal[.]" **Byrom v. State**, 863 So. 2d 836, 865 (Miss. 2003) (citing **State v.**

25

*Berryhill*, 703 So. 2d 250, 253 (Miss. 1997)).  The United States Supreme Court has stated that:

> [u]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.

*Ring*, 536 U.S. at 600 (quoting *Jones v. United States*, 526 U.S. 227, 243 n. 6, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999)).  This Court previously has held that an indictment is sufficient without listing aggravating circumstances, as "[a]nytime an individual is charged with murder, he is put on notice that the death penalty may result.  And, our death penalty statute clearly states the only aggravating circumstances which may be relied upon by the prosecution in seeking the ultimate punishment."  *Williams*, 445 So. 2d at 804-805.  Furthermore, this Court previously has rejected similar arguments regarding the applicability of *Ring* and *Apprendi* to Mississippi's capital murder sentencing scheme.  *See Jordan v. State*, 918 So. 2d 636, 661 (Miss. 2005); *Knox v. State*, 901 So. 2d 1257, 1269 (Miss. 2005); *Hodges v. State*, 912 So. 2d 730, 775-77 (Miss. 2005); *Thorson*, 895 So. 2d at 105-106.[16]  As this Court found in *Jordan*, so we find in the case *sub judice*, "[i]n *Berry v. State*, 882 So. 2d 157 (Miss. 2004), this Court determined that *Ring* and *Apprendi* have no applicability to Mississippi's capital murder sentencing scheme.  This issue is thus without merit."  *Jordan*, 918 So. 2d at 661 (citations omitted).

---

[16]This Court finds that these holdings extend also to *Blakely*, which required the United States Supreme Court "to apply the rule [they] expressed in *Apprendi* . . . ."  *Blakely*, 542 U.S. at 301.

26

**III. Whether the trial court erred in weighing the "avoiding arrest" aggravating circumstance.**

¶37. Loden maintains that this aggravating circumstance was not proven beyond a reasonable doubt as "[t]he only evidence offered in support of the aggravator . . . was [Loden's] tentative response to interrogators as to why he killed: 'Looking back now, I wouldn't have released her because I would've lost the image of being the picture perfect [M]arine . . . .'" Loden argues that this statement amounts to speculated "concern over his professional image only, and nowhere did he so much imply concern over preventing or avoiding arrest." Loden asserts that there is no "evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal [his] identity or to 'cover [his] tracks' so as to avoid apprehension and eventual arrest by authorities." *See **Leatherwood v. State***, 435 So. 2d 645, 651 (Miss. 1983). As such, he contends that "the death sentence must be vacated and this cause remanded for a new sentencing trial without submission of the 'avoiding arrest' aggravating circumstance."

¶38. The State first argues that because Loden did not object to consideration of the "avoiding arrest" aggravating circumstance at trial, nor raise the issue in any post-trial motion, then "the claim is waived and barred from consideration by this Court for the first time on appeal." Procedural bar notwithstanding, the State asserts that in addition to Loden's "statement regarding ruining his perfect military record[,]" there was evidence that "Loden had dug a grave in which to bury [Leesa's] body, but was prevented from doing so by the arrival of law enforcement officers." From this evidence, the State submits that it reasonably could be inferred that Loden was acting to avoid apprehension and eventual arrest.

27

Alternatively, the State argues that under Mississippi Code Annotated Section 99-19-105(3)(d), if an aggravating circumstances is found invalid on appeal, this Court "shall determine whether the remaining aggravating circumstances are outweighed by the mitigating circumstances or whether the inclusion of any invalid circumstance was harmless error, or both." Miss. Code Ann. § 99-19-105(3)(d) (Rev. 2007).[17] As Loden turned aside his opportunity to present mitigating evidence, the State contends that "it cannot be said that had the avoiding arrest aggravator not been found by the trial court that the death sentence would not have been returned based on the remaining aggravating circumstances found by the court." Therefore, the State maintains that "[t]he consideration of the 'avoiding arrest' aggravator in this case was at best harmless beyond a reasonable doubt."

¶39. As Loden spurned objection to the submission of this aggravating circumstance at trial, this Court finds that he is procedurally barred from raising it for the first time on appeal. *See Woodward v. State*, 726 So. 2d 524, 540-41 (Miss. 1997) (citing *Chase v. State*, 645 So. 2d 829, 857 (Miss. 1994)). Notwithstanding the procedural bar, we consider whether Loden's argument has substantive merit.

¶40. Under the applicable standard of review:

> [w]e must view the evidence and all reasonable inferences which may be drawn therefrom in the light most consistent with the verdict. *We have no authority to disturb the verdict short of a conclusion on our part that upon the*

---

[17]In reweighing the remaining aggravating circumstances against mitigating circumstances, this Court is authorized to "(I) affirm the sentence of death or (II) hold the error in the sentence phase harmless error and affirm the sentence of death or (III) remand the case for a new sentencing hearing . . . ." Miss. Code Ann. § 99-19-105(5)(b) (Rev. 2007).

*evidence, taken in the light most favorable to the verdict, no rational trier of
fact could have found the fact at issue beyond a reasonable doubt.*

**White v. State**, 532 So. 2d 1207, 1220 (Miss. 1988) (emphasis added).

¶41.    When considering the "avoiding lawful arrest" aggravating circumstance:

> if there is evidence from which it may be reasonably inferred that a substantial
> reason for the killing was to conceal the identity of the killer or . . . to "cover
> their tracks" *so as to avoid apprehension and eventual arrest by authorities*,
> then it is proper for the court to allow the jury to consider this aggravating
> circumstance.
>
> Upon this construction the Court properly submits this aggravator to the jury
> if evidence existed from which the jury could reasonably infer that concealing
> the killer's identity, or covering the killer's tracks to avoid apprehension and
> arrest, was a substantial reason for the killing.

**Woodward**, 726 So. 2d at 541 (quoting **Foster v. State**, 687 So. 2d 1124, 1140 (Miss. 1996))

(citations omitted) (emphasis added). In **Mitchell v. State**, 792 So. 2d 192 (Miss. 2001), this

Court found "sufficient evidence in the record to show that Mitchell murdered Milliken in

an attempt to cover up evidence that he had inflicted the injuries she had received by his

hand, all in hope of avoiding arrest." **Id**. at 219-20.

¶42.    Viewing Loden's statements and the grave dug in a secluded wooded area on the

property of Loden's grandmother in the light most favorable to finding this aggravating

circumstance (*see* **White**, 532 So. 2d at 1220) this Court concludes that a rational trier of fact

could find beyond a reasonable doubt that Loden killed Leesa in order to avoid apprehension

and arrest. *See* **Woodward**, 726 So. 2d at 541. As such, this issue is without merit.[18]

---

[18]Assuming *arguendo* the issue does have merit, utilizing the reweighing mandated
by Mississippi Code Annotated Section 99-19-105(3)(d) and (5)(b), this Court would hold
the error harmless and affirm the sentence of death because Loden presented no mitigating
evidence.

**IV.** **Whether the submission of the Mississippi Code Annotated Section 99-19-101(5)(d) aggravating circumstance violated the state and federal constitutions.**

¶43. This issue reiterates, in part, Loden's "Motion to Declare Miss. Code Ann. § 97-3-19(2) Unconstitutional; or, In the Alternative, to Preclude the Prosecution From Relying on Miss. Code Ann. § 99-19-101(5)(d) as an Aggravating Circumstance at Defendant's Capital Resentencing Trial." The circuit court denied Loden's motion to declare Mississippi Code Annotated Section 97-3-19(2) unconstitutional.

¶44. Loden posits that "[t]he use of the underlying felony as an aggravating circumstance does not narrow the class of death[-]eligible offenders." Stated otherwise, he maintains that "treating every felony-murder as an aggravating circumstance cannot be a principled means of distinguishing death-eligible defendants" and, therefore, Mississippi Code Annotated Section 99-19-101(5)(d) is "unconstitutionally applied" in light of *Apprendi*, *Ring*, and *Blakely*. Additionally, Loden contends, for the first time on appeal, that because use of the Mississippi Code Annotated Section 99-19-101(5)(d) aggravating circumstance was "based in part on Counts II-VI of the indictment and [Loden] was separately convicted and sentenced on those charges," then "the double jeopardy clause of the state and federal constitutions are violated." Loden asserts that "[u]nder the Double Jeopardy clauses of the state and federal constitutions, the aggravating circumstance based on the separately punished offenses must be struck and the death sentence vacated."

¶45. Procedurally, the State maintains that the "double[-]use" claim is barred because "Loden should have sought a ruling on that portion of the motion [in the circuit court] and did not[,]" while the "double[-]jeopardy" claim is barred because it is raised for the first time

30

on appeal. Substantively, the State responds that use of the underlying felony as an aggravating factor has been repeatedly approved by both this Court and the United States Supreme Court, even in light of *Apprendi* and *Ring*.[19] Regarding the "double[-]jeopardy" claim, the State submits:

> [a] reading of the verdict of the sentencing order of the trial court demonstrates that each of these additional aggravating factors was found *beyond a reasonable doubt. . . .* The jury having been waived, the trial judge was the proper finder of fact and found beyond a reasonable doubt that the capital murder was committed during the commission of the crimes kidnapping, rape and sexual battery. . . . The claim that the rape and sexual battery convictions merge into the capital murder is untenable. . . . *Loden was charged with one count of capital murder while engaged in the commission of kidnapping.* Had he been indicted in a separate count for the kidnapping and had the trial court found him guilty of that count of kidnapping and sentenced him for that conviction there would be a double jeopardy claim. However, . . . [t]he rape and four counts of sexual battery were *separate counts* of the indictment and *did not merge into the capital murder. . . .* Loden was not being doubly sentenced for these crimes.

(Emphasis added).

¶46. Procedurally, this Court finds that the "double-use" claim was properly raised in the circuit court and is not barred, while the "double-jeopardy" claim is raised for the first time on appeal and is barred. *See Thorson*, 895 So. 2d at 104. Nonetheless, this Court will consider the substantive merit of each.

### *"Double-Use" Claim*

¶47. The United States Supreme Court has stated that:

> [i]f a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary

---

[19]As to *Blakely*, "[t]he State would assert that [it] has no application . . . because Loden waived the sentencing jury and the judge was the proper finder of fact . . . ."

31

and capricious infliction of the death penalty. Part of a State's responsibility in this regard is to define the crimes for which death may be the sentence in a way that obviates "standardless [sentencing] discretion."

*Godfrey v. Georgia*, 446 U.S. 420, 100 S. Ct. 1759, 64 L. Ed. 2d 398 (1980) (quoting *Gregg v. Georgia*, 428 U.S. 153, 196 n. 47, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976)). In order "[t]o pass constitutional muster, a capital sentencing scheme must '*genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence* on the defendant compared to others found guilty of murder.'" *Lowenfield v. Phelps*, 484 U.S. 231, 244, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988) (quoting *Zant v. Stephens*, 462 U.S. 862, 877, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983)) (emphasis added). Aggravating circumstances are "a means of *genuinely narrowing* the class of death-eligible persons and thereby channeling the jury's discretion. [There is] no reason why this narrowing function may not be performed by jury findings at *either* the sentencing phase of the trial or the guilt phase." *Lowenfield*, 484 U.S. at 244-45 (emphasis added). There are only two requirements for aggravating circumstances, "[f]irst, the circumstances may not apply to every defendant convicted of murder; it must apply only to a subclass of defendants convicted of murder. . . . Second, the aggravating circumstances may not be unconstitutionally vague." *Tuilaepa v. California*, 512 U.S. 967, 972, 114 S. Ct. 2630, 129 L. Ed. 2d 750 (1994).

¶48. Mississippi Code Annotated Section 97-3-19(2)(e) defines capital murder as:

[t]he *killing of a human being without the authority of law* by any means or in any manner . . . *in the following cases*: . . . [w]hen done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, *kidnapping*, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual

unnatural intercourse with mankind, or in any attempt to commit such felonies
. . . .

Miss. Code Ann. § 97-3-19(2)(e) (Rev. 2006) (emphasis added). In Mississippi, one

aggravating circumstance exists if:

> [t]he capital offense was committed while the defendant was engaged, or was
> an accomplice, in the commission of, or an attempt to commit, or flight after
> committing or attempting to commit, any robbery, rape, arson, burglary,
> *kidnapping*, aircraft piracy, sexual battery, unnatural intercourse with any child
> under the age of twelve (12), or nonconsensual unnatural intercourse with
> mankind, or felonious abuse and/or battery of a child in violation of subsection
> (2) of Section 97-5-39, Mississippi Code of 1972, or the unlawful use or
> detonation of a bomb or explosive device.

Miss. Code Ann. § 99-19-101(5)(d) (Rev. 2007) (emphasis added). This Court previously

has upheld the general constitutionality of the capital sentencing scheme as:

> Mississippi requires more than simple felony murder to sentence a defendant
> to death. Miss. Code Ann. § 99-19-101 allows a jury to consider as an
> aggravating circumstance the fact that a murder was committed while the
> defendant was engaged in the commission of felony. However, *after **Enmund***
> [***v. Florida***, 458 U.S. 782, 73 L. Ed. 2d 1140, 102 S. Ct. 3368 (1982)] *and the
> amendments to our sentencing scheme, that fact alone is insufficient to impose
> the death penalty*. Rather, a jury must find that the defendant actually killed,
> attempted to kill, intended that a killing take place, or contemplated that lethal
> force would be employed in order to impose a death sentence.

***Evans v. State***, 725 So. 2d 613, 684 (Miss. 1997) (emphasis added). *See also **Thorson***, 895

So. 2d at 106 (quoting ***Wilcher v. State***, 697 So. 2d 1087, 1108-1109 (Miss. 1997)) ("[n]ot

every defendant eligible for the death penalty will have committed murder while in the

course of robbery or kidnapping or the other statutorily enumerated felonies. *See* Miss. Code

Ann. § 97-3-19. Therefore, the felony murder aggravator genuinely narrows the class of

defendants eligible for the death penalty."). Furthermore, this Court previously has found

***Ring*** and ***Apprendi*** inapplicable to Mississippi's capital murder sentencing scheme. *See*

Issue II *supra*. In light of those rulings, this Court consistently has held that there is no constitutional error in using the underlying felony as an aggravating circumstance. *See Thorson*, 895 So. 2d at 105-106 (quoting *Wilcher*, 697 So. 2d at 1108-1109) ("[t]he use of the underlying felony . . . as an aggravator during sentencing has been consistently upheld in capital cases."); *Goodin v. State*, 787 So. 2d 639, 654 (Miss. 2001); *Evans*, 725 So. 2d at 697-98. *See also Williams v. Taylor*, 529 U.S. 362, 393 n. 16, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) ("[i]n *Lowenfield* . . . we held that an aggravating circumstance may duplicate an element of the capital offense if the class of death-eligible defendants is sufficiently narrowed by the definition of the offense itself."). Therefore, this Court finds that Loden's "double-use" claim is without merit.

### *"Double-Jeopardy" Claim*

¶49. In *Meeks v. State*, 604 So. 2d 748 (Miss. 1992), the defendant was charged in one count with capital murder, with an underlying felony of kidnapping, and in another count with kidnapping. *See id*. at 750. After being convicted on both counts, Meeks raised a "double-jeopardy" claim. *See id*. at 750-51. This Court reversed and rendered Meeks's kidnapping conviction, finding that "the Constitution precludes the [S]tate punishing him further for the kidnapping of Tana Meeks via Count II of the indictment." *Id*. at 754. In *Hodges*, this Court delineated the boundaries of *Meeks*, finding that the defendant could be convicted on both a kidnapping charge and a capital murder charge when the underlying felony was burglary. *Hodges*, 912 So. 2d at 787.

¶50. The case *sub judice* is more akin to *Hodges* and is distinguishable from *Meeks*. Loden was convicted on a capital murder charge with the underlying felony of kidnapping,

34

but no separate charge of kidnapping was in the indictment. As such, this Court finds that no double-jeopardy issues exist and Loden's claim is without merit.

> **V. Whether the trial court erred in considering both the Mississippi Code Annotated Section 99-19-101(5)(d) aggravating circumstance and the "especially heinous, atrocious or cruel" aggravating circumstance.**

¶51. Loden asserts that "the 'especially heinous' aggravator wholly subsumed the underlying offense aggravator based on Miss. Code Ann. § 99-19-101(5)(d)." Procedurally, the State responds that "Loden made no objection on this basis at trial and is now barred from raising this claim for the first time on appeal." Substantively, the State argues that:

> [l]ooking to the aggravating circumstances found in § 99-19-101(5)(d) and § 99-19-101(5)(h) it is plain that they are separate and distinct from one another. The ["]engaged in the commission of a felony["] speaks to the status of killing the victim while engaged in one or more of the various felonies contained in the statute. The ["]especially heinous aggravator["] goes to the brutality of the crime and the pain and suffering that the victim suffered. Thus they are not subsumed into one another.

¶52. Procedurally, this Court finds that this issue is raised for the first time on appeal and is barred. *See Thorson*, 895 So. 2d at 104. Nonetheless, this Court will consider the substantive merit of this issue.

¶53. This Court has "no authority to disturb the verdict short of a conclusion on our part that upon the evidence, taken in the light most favorable to the verdict, no rational trier of fact could have found the fact at issue beyond a reasonable doubt." *White*, 532 So. 2d at 1220. The fact that aggravating circumstances share relevant evidence does not make them duplicative. *See Jones v. United States*, 527 U.S. 373, 399-400, 119 S. Ct. 2090, 144 L. Ed. 2d 370 (1999). Furthermore, in *Jordan v. State*, 786 So. 2d 987 (Miss. 2001), this Court

35

found that "[t]he two aggravating factors of kidnapping and heinousness are not 'doubled up' in the case at hand. Jordan could have kidnap[p]ed Edwina without the crime being heinous. . . . He did not have to kill her in the cold and inhumane way he did. . . . This claim is without merit." *Id*. at 1005. This Court finds that the differentiated designation of these aggravating circumstances in Mississippi Code Annotated Section 99-19-101(5)(d) and (5)(h) fundamentally indicates that they are "separate and distinct." *Hughes v. State*, 735 So. 2d 238, 278 (Miss. 1999). Moreover, this Court finds the logic underlying *Jordan* is equally applicable in the case *sub judice*. A rational trier of fact could find beyond a reasonable doubt (*see White*, 532 So. 2d at 1220) that Loden kidnapped Leesa and killed her in a "cold and inhumane way." *Jordan*, 786 So. 2d at 1005. Furthermore, no reasonable doubt exists that Loden could have kidnapped Leesa without the crime being heinous and he did not have to kill her in the "cold and inhumane way," *id*., which Loden readily admitted. This Court finds that this issue is without merit.

**VI. Whether the statutorily mandated proportionality review of Mississippi Code Annotated Section 99-19-105(3) was satisfied.**

¶54. Mississippi Code Annotated Section 99-19-105(3)(a-c) (Rev. 2007) mandates that this Court consider:

> (a) Whether the sentence of death was imposed under the influence of *passion, prejudice or any other arbitrary factor*;
>
> (b) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in Section 99-19-101;
>
> (c) Whether the sentence of death is *excessive or disproportionate* to the penalty imposed in similar cases considering both the crime and the defendant . . . .

36

Miss. Code Ann. § 99-19-105(3)(a-c) (Rev. 2007) (emphasis added). As to (a), the death sentence was imposed by the circuit court following Loden's guilty plea; the presentation of evidence regarding aggravating circumstances by the State, which Loden elected not to challenge; and Loden's decision not to offer any mitigating evidence. The learned judge first found that each of the four factors in Mississippi Code Annotated Section 99-19-101(7) was satisfied, then concluded that the aggravating circumstances outweighed the mitigating circumstances and imposed the death sentence. This Court finds no evidence presented, or argument asserted, that Circuit Judge Gardner was influenced by "passion, prejudice or any other arbitrary factor[,]" in imposing that sentence. Miss. Code Ann. § 99-19-105 (Rev. 2007). As such, this Court concludes that Mississippi Code Annotated Section 99-19-105(a) was satisfied.

¶55. Regarding (b), this Court finds that Issues III-V, *supra*, clearly establish that, given the evidence presented, "a rational trier of fact could have found" each of the aggravating circumstances "beyond a reasonable doubt." *White*, 532 So. 2d at 1220.

¶56. As to (c), Loden pleaded guilty to brutally raping and sexually battering Leesa for nearly four hours, before killing her by way of suffocation and manual strangulation. At the sentencing hearing, the circuit court determined that Loden actually killed, attempted to kill, intended that a killing take place, and contemplated that lethal force would be employed. *See* Miss. Code Ann. § 99-19-101(7) (Rev. 2007). Thereafter, the circuit court found the aggravating circumstances in Mississippi Code Annotated Section 99-19-101(5)(d), (e), and (h) beyond a reasonable doubt. Weighing those aggravating circumstances against the mitigating circumstances, the circuit court imposed the death sentence. From the evidence

37

presented, this Court finds the death penalty was not a disproportionate or excessive sentence in light of Loden's barbaric conduct and was not disproportionate or excessive when compared to the sentences in other capital murder cases affirmed by this Court. *See Evans*, 725 So. 2d at 708.

> ### VII. Whether alleged erroneous advice of trial counsel prejudiced Loden by causing him to enter an involuntary guilty plea to capital murder.

¶57. Loden has disingenuously presented argument that he:

> pled guilty to capital murder, relying on trial counsel's erroneous advice that he could still appeal adverse rulings on pre-trial motions after entering the guilty plea. This advice, of course, is not the law. . . . Consequently, this plea was involuntary. A plea of guilty is not binding upon a criminal defendant unless it is entered voluntarily and intelligently.

Loden loosely attempts to undergird his argument, offering:

> the letter to trial counsel less than two months before the plea [August 2, 2001], letter to trial court less than six months after the plea [March 14, 2002] and after numerous attempts to contact counsel, the plea colloquy itself, the affidavit of trial counsel, the Designation of Record filed by trial counsel now employed by the district attorney [Daniels] and the trial court's clear misunderstanding of the legal question at issue in this case.

As such, he unpersuasively asserts that the ineffective-assistance-of-counsel standard set forth in *Strickland* is met. Specifically, Loden argues, deficient performance exists in counsel "erroneously advising [that] he could appeal his conviction based on a guilty plea[,]" and prejudice exists, in that "he would not have pled guilty but for the erroneous advice of counsel." Therefore, he asserts that "the guilty plea to capital murder must be vacated."

¶58. In response, the State contends that Loden "failed to sustain his burden of proof by a preponderance of evidence that he would not have plead[ed] guilty, but for the alleged

38

incorrect advice of trial counsel regarding his right to appeal." In short, the State maintains that Loden's argument is based on self-serving testimony and a skewed interpretation of the guilty plea colloquy and affidavit of trial counsel. According to the State:

> the claim Loden makes is that he was not advised that by pleading guilty he would not get a direct appeal of his conviction. That question was specifically asked during the plea colloquy and Loden answered that he understood that by pleading guilty he would not get a direct appeal of his conviction. Further, the affidavit of his trial attorney, furnished to the trial court by Loden, states without reservation that Loden was informed that by pleading guilty he would not get a direct appeal of the conviction.

In total, the State asserts that the circuit court's rejection of "Loden's post-plea claim that he had not been properly advised of the consequence of a guilty plea on his right to appeal[,]" and subsequent denial of post-conviction relief, was not clearly erroneous.

¶59. "When reviewing a lower court's decision to deny a petition for post conviction relief this Court will not disturb the trial court's factual findings unless they are found to be *clearly erroneous*." ***Brown v. State***, 731 So. 2d 595, 598 (Miss. 1999) (citing ***Bank of Mississippi v. Southern Mem'l Park, Inc.***, 677 So. 2d 186, 191 (Miss. 1996)) (emphasis added). In making that determination, "[t]his Court must examine the entire record and accept 'that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact . . . .'" ***Mullins v. Ratcliff***, 515 So. 2d 1183, 1189 (Miss. 1987) (quoting ***Cotton v. McConnell***, 435 So. 2d 683, 685 (Miss. 1983)). That includes deference to the circuit judge as the "sole authority for determining credibility of the witnesses." ***Mullins***, 515 So. 2d at 1189 (citing ***Hall v. State ex rel. Waller***, 247 Miss. 896, 903, 157 So. 2d 781, 784 (1963)). Before the circuit court, Loden bore the burden of "proof by a

preponderance of the evidence" that he was entitled to post-conviction relief. *See* Miss. Code

Ann. § 99-39-23(7) (Rev. 2007); *Lambert v. State*, 941 So. 2d 804, 811 (Miss. 2006).

*Voluntariness*

¶60. While there is "not a per se rule prohibiting collateral attack on a plea in all

circumstances, simply because the transcript on its face reflects recitation of voluntariness

and awareness of the consequences[,]" *Baker v. State*, 358 So. 2d 401, 403 (Miss. 1978),

there is "*a strong presumption of validity of anyone's statement under oath.*" *Holt v. State*,

650 So. 2d 1267, 1270 (Miss. 1994) (emphasis added). According to this Court:

> [a] plea of guilty is not binding upon a criminal defendant unless it is entered
> voluntarily and intelligently. *Myers v. State*, 583 So. 2d 174, 177 (Miss.
> 1991). A plea is deemed "voluntary and intelligent" only where the defendant
> is advised concerning the nature of the charges against him and the
> consequences of the plea. *See Wilson v. State*, 577 So. 2d 394, 396-97 (Miss.
> 1991). Specifically, the defendant must be told that a guilty plea involves a
> waiver of the right to trial by jury, the right to confront adverse witnesses, and
> the right to protection against self-incrimination. . . . Rule 3.03 of the Uniform
> Criminal Rules of Circuit Court Practice additionally requires, inter alia, that
> the trial judge "inquire and determine" that the accused understands the
> maximum and minimum penalties to which he may be sentenced.

*Alexander v. State*, 605 So. 2d 1170, 1172 (Miss. 1992). Furthermore, this Court has held

"that when the trial court questions the defendant and explains his rights and the effects and

consequences of the plea on the record, the plea is rendered voluntary despite advice given

to the defendant by his attorney." *Harris v. State*, 806 So. 2d 1127, 1130 (Miss. 2002). The

record clearly reflects that Judge Gardner expressly informed Loden of the charges against

him; the consequences of his guilty plea, including the minimum and maximum penalties in

sentencing; and the implications of waiving his right to trial by jury, right to confront adverse

witnesses, and right to protection against self-incrimination. Furthermore, Loden

affirmatively stated under oath that his guilty pleas were "free and voluntary." Thereafter, Loden pleaded guilty to all charges. As such, this Court finds that the circuit court was not "clearly erroneous" in finding that Loden's guilty plea was "knowing and voluntary." *Brown*, 731 So. 2d at 598.

### *Ineffective Assistance of Counsel*

¶61. "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. In evaluating counsel's performance:

> *[f]irst*, the defendant must show that *counsel's performance was deficient*. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Second*, the defendant must show that the deficient performance *prejudiced* the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id*. at 687 (emphasis added). "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. This Court finds that the circuit court was not "clearly erroneous" in finding that counsel's performance was not deficient. *Brown*, 731 So. 2d at 598.

¶62. Johnstone's affidavit provides that he and Daniels "advised [Loden] that by pleading guilty he was *waiving his right to direct appeal*." (Emphasis added). Furthermore, Loden responded to the following questions from Circuit Judge Gardner, as follows:

> Q. . . . Do you understand that as to each of the charges, Counts I through VI, if you proceeded to trial before a jury and if the jury found you guilty of those charges and returned a verdict fixing the penalty at whatever they might fix it,

41

in any event, the question of your guilt or innocence or imposition of the punishment determined by the jury *would be something that you could appeal to the Supreme Court of this state*?
A. *Yes*, sir, I understand.

. . .

Q. *Do you understand that if you proceed through the course of this and the Court makes a determination of your guilt, you will have no right to appeal that?* . . .
A. *Yes*, sir.

(Emphasis added). Loden attempts to prop this unpersuasive claim upon a self-serving affidavit and dubious testimony mixed with evasive responses at the post-conviction relief hearing. He contests Johnstone's affidavit insofar as it provides that "I told Loden that this automatic review would be some sort of appeal but that was unclear to us which issues would be subject to review." Circuit Judge Gardner considered all evidence and arguments, and then concluded:

> a review of the record reveals there is no merit to [Loden's] claim of ineffective assistance of counsel based on allegations that his attorney did not properly advise him, that by pleading guilty, he was waiving his right to appeal. Specifically, at the guilt plea hearing, the Court advised [Loden] of his rights. [Loden] acknowledged that he was giving up his right to appeal by pleading guilty to the charge.

It was the trial court's responsibility to assess Loden's credibility. *See **Mullins***, 515 So. 2d at 1189. It is obvious that the circuit judge considered prior proceedings and the entire record before him, including Loden's testimony, Loden's prior letters to Johnstone and the circuit court, affidavits of Loden and Johnstone, and the plea colloquy. The lower court rejected Loden's pretext and found no deficiency in counsel before Loden pleaded guilty and waived his right to appeal. This Court, accepting all evidence reasonably supporting that

42

finding and the reasonable inferences therefrom,[20] *see id.*, finds no support for the proposition that the circuit court's conclusion that counsel's performance was not deficient was "clearly erroneous." ***Brown***, 731 So. 2d at 598. This issue is without merit.

**CONCLUSION**

¶63.    Based upon the aforementioned analysis, this Court rejects Loden's appeal and affirms the conviction and death sentence imposed by the Circuit Court of Itawamba County, and subsequent denial of post-conviction relief.

¶64.    **CASE NO. 2002-DP-00282-SCT: COUNT I: CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH, AFFIRMED. COUNT II: CONVICTION OF RAPE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE TO RUN CONSECUTIVE TO ALL OTHER SENTENCES IMPOSED. COUNT III: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE TO RUN CONSECUTIVE TO ALL OTHER SENTENCES IMPOSED. COUNT IV: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.   SENTENCE TO RUN CONSECUTIVE TO ALL OTHER SENTENCES IMPOSED.   COUNT V: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE TO RUN CONSECUTIVE TO ALL OTHER SENTENCES IMPOSED. COUNT VI: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.   SENTENCE TO RUN CONSECUTIVE TO ALL OTHER SENTENCES IMPOSED.**

**CASE NO. 2006-CA-00432-SCT: PETITION FOR POST CONVICTION RELIEF, DENIED.**

---

[20]For instance, a reasonable inference regarding Johnstone's affidavit on automatic review is that he was simply advising Loden to get all matters on the record because, while he was uncertain which specific issues this Court would address, he was certain that this Court would only address issues of record.

43

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

# APPENDIX

## DEATH CASES AFFIRMED BY THIS COURT

*Bennett v. State,* 933 So. 2d 930 (Miss. 2006).

*Havard v. State,* 928 So. 2d 771 (Miss. 2006).

*Spicer v. State,* 921 So. 2d 292 (Miss. 2006).

*Hodges v. State,* 912 So. 2d 730 (Miss. 2005).

*Walker v. State,* 913 So. 2d 198 (Miss. 2005).

*Le v. State,* 913 So. 2d 913 (Miss. 2005).

*Brown v. State,* 890 So. 2d 901 (Miss. 2004).

*Powers v. State* 883 So. 2d 20 (Miss. 2004)

*Branch v. State,* 882 So. 2d 36 (Miss. 2004).

*Scott v. State,* 878 So. 2d 933 (Miss. 2004).

*Lynch v. State,* 877 So. 2d 1254 (Miss. 2004).

*Dycus v. State,* 875 So. 2d 140 (Miss. 2004).

*Byrom v. State,* 863 So. 2d 836 (Miss. 2003).

*Howell v. State,* 860 So.2d 704 (Miss. 2003).

*Howard v. State,* 853 So.2d 781 (Miss. 2003).

*Walker v. State,* 815 So. 2d 1209 (Miss. 2002). *following remand.

*Bishop v. State,* 812 So. 2d 934 (Miss. 2002).

*Stevens v. State,* 806 So. 2d 1031 (Miss. 2002).

*Grayson v. State,* 806 So. 2d 241 (Miss. 2002).

*Knox v. State,* 805 So. 2d 527 (Miss. 2002).

*Simmons v. State,* 805 So.2d 452 (Miss. 2002).

*Berry v. State,* 802 So.2d 1033 (Miss. 2001).

*Snow v. State*, 800 So.2d 472 (Miss. 2001).

*Mitchell v. State,* 792 So.2d 192 (Miss. 2001).

*Puckett v. State,* 788 So. 2d 752 (Miss. 2001). * following remand.

*Goodin v. State,* 787 So. 2d 639 (Miss. 2001).

*Jordan v. State,* 786 So. 2d 987 (Miss. 2001).

*Manning v. State,* 765 So. 2d 516 (Miss. 2000). *following remand.

*Eskridge v. State,* 765 So. 2d 508 (Miss. 2000).

*McGilberry v. State,* 741 So. 2d 894 (Miss. 1999)**.**

*Puckett v. State,* 737 So. 2d 322 (Miss. 1999).*remanded for *Batson* hearing.

*Manning v. State,* 735 So. 2d 323 (Miss. 1999). *remanded for *Batson* hearing.

*Hughes v. State,* 735 So. 2d 238 (Miss. 1999).

*Turner v. State,* 732 So. 2d 937 (Miss. 1999).

*Smith v. State,* 729 So. 2d 1191 (Miss. 1998).

*Burns v. State,* 729 So. 2d 203 (Miss. 1998).

*Jordan v. State,* 728 So. 2d 1088 (Miss. 1998).

*Gray v. State,* 728 So. 2d 36 (Miss. 1998).

*Manning v. State,* 726 So. 2d 1152 (Miss. 1998).

*Woodward v. State,* 726 So. 2d 524 (Miss. 1997).

*Bell v. State,* 725 So. 2d 836 (Miss. 1998).

*Evans v. State,* 725 So. 2d 613 (Miss. 1997).

*Brewer v. State,* 725 So. 2d 106 (Miss. 1998).

*Crawford v. State,* 716 So. 2d 1028 (Miss. 1998).

*Doss v. State,* 709 So. 2d 369 (Miss. 1996).

*Underwood v. State,* 708 So. 2d 18 (Miss. 1998).

*Holland v. State,* 705 So. 2d 307 (Miss. 1997).

*Wells v. State,* 698 So. 2d 497 (Miss. 1997).

## DEATH CASES AFFIRMED BY THIS COURT
### (continued)

*Wilcher v. State,* 697 So. 2d 1087 (Miss. 1997).

**Wiley v. State,** 691 So. 2d 959 (Miss. 1997).

**Brown v. State**, 690 So. 2d 276 (Miss. 1996).

**Simon v. State**, 688 So. 2d 791 (Miss.1997).

**Jackson v. State**, 684 So. 2d 1213 (Miss. 1996).

**Williams v. State,** 684 So. 2d 1179 (Miss. 1996).

**Davis v. State,** 684 So. 2d 643 (Miss. 1996).

**Taylor v. State**, 682 So. 2d. 359 (Miss. 1996).

**Brown v. State**, 682 So. 2d 340 (Miss. 1996).

**Blue v. State**, 674 So. 2d 1184 (Miss. 1996).

**Holly v. State**, 671 So. 2d 32 (Miss. 1996).

**Walker v. State**, 671 So. 2d 581(Miss. 1995).

**Russell v. State**, 670 So. 2d 816 (Miss. 1995).

**Ballenger v. State**, 667 So. 2d 1242 (Miss. 1995).

**Davis v. State**, 660 So. 2d 1228 (Miss. 1995).

**Carr v. State**, 655 So. 2d 824 (Miss. 1995).

**Mack v. State**, 650 So. 2d 1289 (Miss. 1994).

**Chase v. State**, 645 So. 2d 829 (Miss. 1994).

**Foster v. State**, 639 So. 2d 1263 (Miss. 1994).

**Conner v. State**, 632 So. 2d 1239 (Miss. 1993).

**Hansen v. State**, 592 So. 2d 114 (Miss. 1991).

*****Shell v. State**, 554 So. 2d 887 (Miss. 1989), **Shell v. Mississippi,** 498 U.S. 1 (1990) reversing, in part, and remanding, **Shell v. State**, 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*Davis v. State*, 551 So. 2d 165 (Miss. 1989).

*Minnick v. State*, 551 So. 2d 77 (Miss. 1989).

*****Pinkney v. State**, 538 So. 2d 329 (Miss. 1989), **Pinkney v. Mississippi**, 494 U.S. 1075 (1990) vacating and remanding **Pinkney v. State**, 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*****Clemons v. State**, 535 So. 2d 1354 (Miss. 1988), **Clemons v. Mississippi**, 494 U.S. 738 (1990) vacating and remanding, **Clemons v. State**, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*Woodward v. State*, 533 So. 2d 418 (Miss. 1988).

*Nixon v. State*, 533 So. 2d 1078 (Miss. 1987).

*Cole v. State*, 525 So. 2d 365 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1346 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1317 (Miss. 1987).

*Faraga v. State*, 514 So. 2d 295 (Miss. 1987).

*****Jones v. State**, 517 So. 2d 1295 (Miss. 1987)**, Jones v. Mississippi**, 487 U.S. 1230 (1988) vacating and remanding, **Jones v. State**, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Wiley v. State*, 484 So. 2d 339 (Miss. 1986).

*Johnson v. State*, 477 So. 2d 196 (Miss. 1985).

*Gray v. State*, 472 So. 2d 409 (Miss. 1985).

*Cabello v. State*, 471 So. 2d 332 (Miss. 1985).

*Jordan v. State*, 464 So. 2d 475 (Miss. 1985).

*Wilcher v. State*, 455 So. 2d 727 (Miss. 1984).

*Billiot v. State*, 454 So. 2d 445 (Miss. 1984).

*Stringer v. State*, 454 So. 2d 468 (Miss. 1984).

*Dufour v. State*, 453 So. 2d 337 (Miss. 1984).

*Neal v. State*, 451 So. 2d 743 (Miss. 1984).

*Booker v. State*, 449 So. 2d 209 (Miss. 1984).

*Wilcher v. State*, 448 So. 2d 927 (Miss. 1984).

*Caldwell v. State*, 443 So. 2d 806 (Miss. 1983).

*Irving v. State*, 441 So. 2d 846 (Miss. 1983).

*Tokman v. State*, 435 So. 2d 664 (Miss. 1983).

*Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

*Hill v. State*, 432 So. 2d 427 (Miss. 1983).

*Pruett v. State*, 431 So. 2d 1101 (Miss. 1983).

*Gilliard v. State*, 428 So. 2d 576 (Miss. 1983).

*Evans v. State*, 422 So. 2d 737 (Miss. 1982).

*King v. State*, 421 So. 2d 1009 (Miss. 1982).

*Wheat v. State*, 420 So. 2d 229 (Miss. 1982).

*Smith v. State*, 419 So. 2d 563 (Miss. 1982).

*Johnson v. State*, 416 So. 2d 383 (Miss.1982).

*Edwards v. State*, 413 So. 2d 1007 (Miss. 1982).

*Bullock v. State*, 391 So. 2d 601 (Miss. 1980).

## DEATH CASES AFFIRMED BY THIS COURT
### (continued)

*Reddix v. State*, 381 So. 2d 999 (Miss. 1980).

*Jones v. State*, 381 So. 2d 983 (Miss. 1980).

*Culberson v. State*, 379 So. 2d 499 (Miss. 1979).

*Gray v. State*, 375 So. 2d 994 (Miss. 1979).

*Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

*Voyles v. State*, 362 So. 2d 1236 (Miss. 1978).

*Irving v. State*, 361 So. 2d 1360 (Miss. 1978).

*Washington v. State*, 361 So. 2d 6l (Miss. 1978).

*Bell v. State*, 360 So. 2d 1206 (Miss. 1978).

*Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

**DEATH CASES REVERSED AS TO GUILT PHASE**
**AND SENTENCE PHASE**

*Ross v. State,* — So.2d — (Miss. 2007).

*Flowers v. State,* 842 So.2d 531 (Miss. 2003).

*Randall v. State,* 806 So. 2d 185 (Miss. 2002).

*Flowers v. State,* 773 So.2d 309 (Miss. 2000).

*Edwards v. State,* 737 So. 2d 275 (Miss. 1999).

*Smith v. State,* 733 So. 2d 793 (Miss. 1999).

*Porter v. State,* 732 So.2d 899 (Miss. 1999).

*Kolberg v. State,* 704 So. 2d 1307 (Miss. 1997).

*Snelson v. State,* 704 So. 2d 452 (Miss. 1997).

*Fusilier v. State,* 702 So. 2d 388 (Miss. 1997).

*Howard v. State,* 701 So. 2d 274 (Miss. 1997).

*Lester v. State,* 692 So. 2d 755 (Miss. 1997).

*Hunter v. State*, 684 So. 2d 625 (Miss. 1996).

*Lanier v. State*, 684 So. 2d 93 (Miss. 1996).

*Giles v. State,* 650 So. 2d 846 (Miss. 1995).

*Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994).

*Harrison v. State*, 635 So. 2d 894 (Miss. 1994).

*Butler v. State*, 608 So. 2d 314 (Miss. 1992).

*Jenkins v. State*, 607 So. 2d 1171 (Miss. 1992).

*Abram v. State*, 606 So. 2d 1015 (Miss. 1992).

*Balfour v. State*, 598 So. 2d 731 (Miss. 1992).

*Griffin v. State*, 557 So. 2d 542 (Miss. 1990).

*Bevill v. State*, 556 So. 2d 699 (Miss. 1990).

*West v. State*, 553 So. 2d 8 (Miss. 1989).

*Leatherwood v. State*, 548 So. 2d 389 (Miss. 1989).

*Mease v. State*, 539 So. 2d 1324 (Miss. 1989).

*Houston v. State*,  531 So. 2d 598 (Miss. 1988).

*West v. State*, 519 So. 2d 418 (Miss. 1988).

*Davis v. State*, 512 So. 2d 129l (Miss. 1987).

*Williamson v. State*, 512 So. 2d 868 (Miss. 1987).

*Foster v. State*, 508 So. 2d 1111 (Miss. 1987).

*Smith v. State*, 499 So. 2d 750 (Miss. 1986).

*West v. State*, 485 So. 2d 681 (Miss. 1985).

*Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

*Johnson v. State*, 476 So. 2d 1195 (Miss. 1985).

*Fuselier v. State*, 468 So. 2d 45 (Miss. 1985).

*West v. State*, 463 So. 2d 1048 (Miss. 1985).

*Jones v. State*, 461 So. 2d 686 (Miss. 1984).

*Moffett v. State*, 456 So. 2d 714 (Miss. 1984).

*Lanier v. State*, 450 So. 2d 69 (Miss. 1984).

*Laney v. State*, 421 So. 2d 1216 (Miss. 1982).

# DEATH CASES REVERSED
## AS TO PUNISHMENT AND REMANDED
## FOR RESENTENCING TO LIFE IMPRISONMENT

*Reddix v. State*, 547 So. 2d 792 (Miss. 1989).

*Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988).

*White v. State*, 532 So. 2d 1207 (Miss. 1988).

*Bullock v. State*, 525 So. 2d 764 (Miss. 1987).

*Edwards v. State*, 441 So. 2d 84 (Miss. l983).

*Dycus v. State*, 440 So. 2d 246 (Miss. 1983).

*Coleman v. State*, 378 So. 2d 640 (Miss. 1979).

# DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY

*Rubenstein v. State,* 941 So.2d 735 (Miss. 2006).

*King v. State,* 784 So.2d 884 (Miss. 2001).

*Walker v. State,* 740 So.2d 873 (Miss. 1999).

*Watts v. State,* 733 So.2d 214 (Miss. 1999).

*West v. State,* 725 So. 2d 872 (Miss. 1998).

*Smith v. State*, 724 So. 2d 280 (Miss. 1998).

*Berry v. State,* 703 So.2d 269 (Miss. 1997).

*Booker v. State*, 699 So. 2d 132 (Miss. 1997).

*Taylor v. State*, 672 So. 2d 1246 (Miss. 1996).

*Shell v. State*, 554 So. 2d 887 (Miss. 1989), *Shell v. Mississippi*, 498 U.S. 1 (1990) reversing, in part, and remanding, *Shell v. State* 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989), *Pinkney v. Mississippi,* 494 U.S. 1075 (1990) vacating and remanding, *Pinkney v. State,* 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988), *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding, *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*Jones v. State*, 517 So. 2d 1295 (Miss. 1987), *Jones v. Mississippi,* 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Russell v. State*, 607 So. 2d 1107 (Miss. 1992).

*Holland v. State*, 587 So. 2d 848 (Miss. 1991).

*Willie v. State*, 585 So. 2d 660 (Miss. 1991).

*Ladner v. State*, 584 So. 2d 743 (Miss. 1991).

*Mackbee v. State*, 575 So. 2d 16 (Miss. 1990).

*Berry v. State*, 575 So. 2d 1 (Miss. 1990).

*Turner v. State*, 573 So. 2d 657 (Miss. 1990).

*State v. Tokman*, 564 So. 2d 1339 (Miss. 1990).

*Johnson v. State*, 547 So. 2d 59 (Miss. 1989).

*Williams v. State*, 544 So. 2d 782 (Miss. 1989); *sentence aff'd* 684 So. 2d 1179 (1996).

*Lanier v. State*, 533 So. 2d 473 (Miss. 1988).

*Stringer v. State*, 500 So. 2d 928 (Miss. 1986).

*Pinkton v. State*, 481 So. 2d 306 (Miss. 1985).

*Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

*Cannaday v. State*, 455 So. 2d 713 (Miss. 1984).

*Wiley v. State*, 449 So. 2d 756 (Miss. 1984); resentencing affirmed, *Wiley v. State*, 484 So. 2d 339 (Miss. 1986), *cert. denied Wiley v. Mississippi*, 479 U.S. 1036 (1988); resentencing ordered, *Wiley v. State,* 635 So. 2d 802 (Miss. 1993) following writ of habeas corpus issued pursuant to *Wiley v. Puckett*, 969 So. 2d 86, 105-106 (5th Cir. 1992); resentencing affirmed, *Wiley v. State*, 95-DP-00149, February 13, 1997 (rehearing pending).

*Williams v. State*, 445 So. 2d 798 (Miss. 1984).

\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.